**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO. 7:20-CV-026 |
| 1.8946 ACRES OF LAND, MORE OR LESS, SITUATE IN STARR COUNTY, STATE OF TEXAS; AND MAURO R. GARCIA, JR., *ET AL.* | § § § § § | |
| *Defendants.* | § § | |

_____

**UNITED STATES' BRIEF ON JUST COMPENSATION**
_____

In response to the Court's Order,[1] the United States respectfully submits this Brief on Just Compensation for the temporary right of entry acquired in the instant proceeding. As discussed below, temporary rights of entry for surveying purposes have no measurable market value. They are minimal in scope, limited in time, and reserve to the landowner all rights and interests that do not interfere with the United States' narrow ability to survey and assess the property. The nominal $100.00 in estimated just compensation the United States has deposited in this case more than compensates for this limited right of entry with no measurable market value.

### I.   BACKGROUND PERTINENT TO THIS FILING

1. Here, the United States acquired a temporary easement authorizing it to enter the landowner's property to:

> make borings, and conduct [surveying, testing and other investigatory work needed to plan the proposed construction of roads, fencing, vehicle barriers, security lighting, camera, sensors, and related structures designed to help secure the United States/Mexico border within the State of Texas]…

---
[1] Dkt. No. 13

> including the right to trim or remove vegetative or structural obstacles that interfere with said work . . .

Schedule E to Declaration of Taking (incorporating Schedule B).[2] The estate taken has a 12-month term. *Id*. Importantly, the landowner retains "*all* right, title, and privileges as may be used and enjoyed without interfering with or abridging the rights" specified above. *Id*. (Emphasis added).

2. The United States deposited $100.00 as the estimated just compensation in this case.[3] The temporary estate acquired is limited in scope and duration and, as noted above and explained in more detail below, has no measurable market value. Also as explained in more detail throughout this brief, because the U.S. Constitution takings clause and the Declaration of Taking Act require an estimate of just compensation to be deposited and paid to the landowner, and yet the estate acquired has no measurable market value, the United States determined, as an administrative matter, that $100 accurately represents the nominal value of the estate. See, Ex. 1 (Unsworn Declaration Under Penalty of Perjury of Jason Powell), generally and ¶ 16.

## II. ARGUMENT

### A. *The Landowner Has Not Established Fair Market Value Of The Temporary Right Of Entry Acquired Here*

3. Under the Fifth Amendment's takings clause, private property may not be taken for a public purpose without "just compensation." U.S. Const. amend. V. Just compensation generally means the fair market value of the property when acquired. *See Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 10 (1984). Fair market value is typically defined as "what a willing buyer would pay in cash to a willing seller." *United States v. Miller*, 317 U.S. 369, 374 (1943).

---

[2] Dkt. No. 2.
[3] Dkt. No. 5.

4. In a federal condemnation action, just compensation is determined by calculating the property's fair market value on the date it was acquired—the "date of taking." *See generally id*.; *United States v. Reynolds*, 397 U.S. 14 (1970). Courts determine the value based on what a hypothetical buyer in the open market would pay a willing seller. *Id*. Generally, for a permanent acquisition, "[t]he best evidence of market value is comparable sales—*i.e.*, sales from a willing seller to a willing buyer of similar property in the vicinity of the taking at or about the same time as the taking." *United States v. 8.41 Acres of Land, More or Less, Situated in Orange County, State of Texas, et al.*, 680 F.2d 388, 395 (5th Cir. 1982) (citations omitted).

5. "Considerations that may not reasonably be held to affect market value are excluded." *United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984). Thus, the value that the individual landowner places on a property is not relevant to the valuation inquiry. *See, U.S. v. 79.20 Acres of Land, More or Less, Situated in Stoddard County, Missouri*, 710 F.2d 1352, 1357 (8th Cir. 1983) (holding that "[a]ny special value to the owner or to the condemnor must be disregarded by the fact-finding body in arriving at fair-market value") (citing *Miller*, 317 U.S. at 375).

6. In the case of a temporary taking like the right of entry the United States has acquired over Mr. Garcia and his sister Olga di Buono aka Olga Garcia (hereinafter "the landowners") property, since the property is returned to the owner when the estate taken ends, the just compensation to which the owner is entitled is the value of the United States' limited use of the property during the temporary taking. *See, First English Evangelical Lutheran Church v. Los Angeles*, 482 U.S. 304, 319 (1987) ("Where this burden results from governmental action that amounted to a [temporary] taking, the Just Compensation Clause of the Fifth Amendment requires that the government pay the landowner for the value of the use of the land during this period."). Generally, market rental

value is the appropriate measure of compensation for a temporary taking. *Kimball Laundry Co. v. United States,* 338 U.S. 1, 7 (1949).

7. Furthermore, as a Court recently held in *United States v. 30.00 Acres of Land, et al.*, "[i]n land condemnation cases, the landowner has the burden of establishing the value of the property to be condemned." *United States v. 30.00 Acres of Land, et al.*, 2020 WL 185489, at *2 (S.D. Tex. April 13, 2020) (citing *United States v. 62.50 Acres*, 953 F.2d 886, 890 (5th Cir. 1992)). *See also United States v. 50.822 Acres of Land, More or Less, In Nueces County, State of Tex.*, 950 F.2d 1165, 1169 (5th Cir. 1992); *8.41 Acres*, 680 F.2d at 394 (citing *United States ex rel. Tennessee Valley Auth. v. Powelson*, 319 U.S. 266 (1943) ("The burden of establishing the value of the lands sought to be condemned is on the landowner")).

8. To date, the landowners have failed to meet their burden to establish the fair market value of the temporary right of entry at issue here. They have not offered any comparable sales, which as explained below, do not exist for temporary rights of entry that have no measurable market value. The landowners have also failed to offer evidence and establish how the temporary right of entry acquired by the Untied States affects or impairs their use of the subject property. They further have offered no evidence that the presence of a temporary right of entry for a limited purpose affects a property's sale or rental price, or that this temporary right has any independent sale or rental value. As they have not established the value of the temporary right of entry acquired by the United States, the Court should, on this basis alone, accept the United States' estimate of just compensation for a temporary right that has no measurable market value. *See 8.41 Acres,* 680 F.2d at 395 ("The landowners had an opportunity to prove the market value of the tracts was higher than established by the Government, but failed to meet this burden . . . . Accordingly, it is unnecessary to conduct additional hearings on determining the fair market value of the parcels.").

*B. Temporary Rights Of Entry Have No Measurable Market Value*

9. Even if the Court were to look beyond the landowner failure to establish the value of the temporary right of entry at issue, it has no measureable market value. As discussed above, just compensation for an acquisition by condemnation is the fair market value of the property acquired, the best evidence of which for a permanent taking is comparable sales. *8.41 Acres*, 680 F.2d at 395. Or, for a temporary taking, the just compensation to which the owner is entitled is the fair rental value for the period for which the United States uses the property. *Kimball Laundry,* 338 U.S. at 7. But temporary rights of entry for survey and investigative purposes do not affect the market value of the subject property. For instance, when a home or landowner sells property, most lenders require a survey and appraisal; however, granting temporary authorization for the property to be surveyed and inspected does not affect the value and sales price of the property.

10. Available market data does not show a difference in the value of a property burdened with a temporary right-of-entry easement to conduct a survey as compared to a property without such an easement. Mr. Roger Jennings, a licensed real estate appraiser and the Chief Supervisory Review Appraiser with the United States Army Corps of Engineers (USACE), Fort Worth (Texas) District, has analyzed the market value of temporary rights of entry. Ex. 2 (Unsworn Declaration Under Penalty of Perjury of Roger Jennings "Decl. of R. Jennings"), ¶ 1. As a result of his analysis, and in his professional opinion, Mr. Jennings has determined that there is no measurable market value associated with these temporary rights of entry. *Id*, ¶ 10.

11. Mr. Jennings is very familiar with the Rio Grande Valley market area, having performed 18 appraisals and over 70 appraisal reviews for properties in this area within the past two years. *Id.*, ¶ 2. As part of his analysis of whether a temporary right of entry has a measurable market value, he researched data regarding USACE acquisitions of temporary rights of entry going back

15 years. *Id.*, ¶ 4. He identified 1,160 temporary rights of entry USACE acquired during this period, 533 of which were acquired for the same project for which the United States is surveying the subject property. *Id* For each of these temporary rights of entry for which the United States had to file a condemnation action and yet had no measurable market value, the United States made an administrative decision to deposit an estimated just compensation of no more than a nominal amount of $100. See, *Id.* at ¶ 4 and Ex. 1 Unsworn Declaration Under Penalty of Perjury of Jason Powell at ¶ 16. Generally, rights of entry acquired without a condemnation action were obtained without any consideration paid to the landowner. See Ex. 1, Unsworn Declaration Under Penalty of Perjury of Jason Powell at ¶ 16.

12. Mr. Jennings also interviewed market participants, who each confirmed that temporary rights of entry have no measurable market value. He spoke to Mr. John Hastings, who has extensive experience in the natural gas and oil industry obtaining temporary rights of entry in Arkansas, Oklahoma, Kansas, Colorado, Wyoming, and Texas. *Id.*, ¶ 5(b). He informed Mr. Jennings that, in his experience, it is not customary to pay for temporary rights of entry, and that any consideration paid for a temporary right of entry is not based on market value because there is no such value associated with a temporary right of entry. *Id*. Mr. Jennings also spoke to Mr. Johnny Colley, who worked for several oil and gas companies for seven years before joining USACE as a Realty Specialist based in Fort Worth, Texas. *Id.*, ¶ 5(a). Mr. Colley estimated that he acquired between 250 and 350 temporary rights of entry during this seven-year period, and did not pay consideration for any of them. *Id*.

13. In addition, Mr. Jennings reviewed a 2010 appraisal by Mr. Stephen Roach and Cody Knox, attached as Exhibit A to R. Jennings' Declaration (Exhibit 2-A), which analyzed the same type of temporary right of entry at issue here. *Id.*, ¶¶ 6-9. In Mr. Jennings' professional opinion,

the methodology used by Mr. Roach and Mr. Knox in their appraisal appears to be complete, to contain adequate supporting information for the conclusions contained therein, and to meet the Uniform Standards of Professional Appraisal Practice and the Uniform Appraisal Standards for Federal Land Acquisitions. *Id.*, ¶ 8. He also considered that the type of temporary rights of entry were the same in either market. *Id.*, ¶ 9. Accordingly, Mr. Jennings determined that this report is relevant to his analysis of the same type of temporary rights of entry in Texas. *Id.* The conclusion reached by Mr. Roach and Mr. Knox that temporary rights of entry have no measurable market value is consistent with Mr. Jennings' analysis, and his experiences with, and understanding of, the value of these temporary rights of entry (or lack thereof). *Id.*, ¶ 7.

14. Because buyers, sellers, and renters of property do not ascribe value to temporary rights of entry such as the one acquired here, it is not surprising there are no comparable sales or market data showing a rental rate for such easements - prospective purchasers do not typically pay for this right. *Cf. generally Klemic v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 673, 689 (W.D. Va. 2015) (collecting cases showing that the entry on private property for the purposes of surveying and other explorations does not result in a compensable harm). Temporary rights of entry have no measurable market value for which a landowner must be compensated, and no more than a nominal value therefore is appropriate.

> C. *The United States' Policy Determination To Pay Compensation Of $100 For Temporary Rights Of Entry That Have No Measurable Market Value*

15. In situations such as this, in which the estate the United States acquires has no discernible market value, it is proper to pay nominal compensation. If a property interest has no fair market value then resort is not had to non-comparable sales or leases; rather, a nominal amount is given to compensate for infringement on the right to exclude. For example, in *50.822 Acres*, the Fifth Circuit affirmed an award of $100.00 to each landowner as nominal compensation when the estate

acquired through condemnation, a purchase option, had no market value. *50.822 Acres*, 950 F.2d at 1165. The Court held that "it appears that the [landowners] have failed to meet their burden of establishing the value of the opinion. Accordingly, the district court's award of only nominal compensation was not clearly erroneous." *Id.*, at 1169. *See also St. Genevieve Gas Co., Inc. v. Tenn. Valley Auth.*, 747 F.2d 1411 (11th Cir. 1984); *U.S. ex rel. Tenn. Valley Auth. v. A Temp. Right to Enter*, 4:14-CV-085-HSM-SKL, 2017 WL 2559976, at *6 (E.D. Tenn. June 13, 2017) (holding that the landowner was entitled compensation in the nominal amount of $1 for the temporary right of entry to survey). A landowner "is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more." *United States v. 320.0 Acres of Land, More or Less, in Monroe County, State of Fla.*, 605 F.2d 762, 780 (5th Cir. 1979). Similar to *50.822 Acres*, this Court recently found that the landowner failed to meet her burden of establishing value, and ultimately determined "that the United States' estimate of $100 [was] sufficient just compensation to compensate [the landowner] for the easement over" her property. *United States v. 30.00 Acres of Land, et al.*, No. 7:19-CV-00234 (S.D. Tex. June 9, 2020).

16. Here, instead of paying $1.00 in compensation for a temporary right of entry that has no measurable market value, the United States decided, as a matter of policy, to deposit an estimate for nominal just compensation in the amount of $100.00. The size of the subject property over which the United States has acquired a temporary right of entry for survey purposes is immaterial to the amount of nominal compensation that should be paid. *See, e.g., St. Genevieve Gas Co.*, 747 F.2d at 1411 (rejecting the argument that the amount to be awarded as nominal damages should be based on acreage of the property affected, because the legal entitlements acquired in that acreage were only mineral leases). In taking a temporary right of entry to survey property, the United States

has not taken, and the landowner does not lose use of, the underlying property. Moreover, the contractors performing the surveys take measures to minimize any impact their presence may have on any activity the landowner is performing or wants to perform on their land. See, Ex. 1, Unsworn Declaration Under Penalty of Perjury of Jason Powell at ¶ 15. And the landowner still retains the ability to exclude anyone other than the United States for the limited purpose and time period stated in the Declaration of Taking. Thus, nominal compensation of $100.00 is more than appropriate for this temporary, limited in scope, right of entry.

### D. The Estimated Nominal Compensation Of $100.00 Does Not Include Future Damages Claims, Which Are Recoverable Separately, If At All

17. The United States has no expectation that it will harm the subject property in any way when it exercises the minimally intrusive right of entry to survey the subject property. In the unlikely event the landowners come to believe the United States has done so, they may submit an administrative claim to the nearest Customs and Border Patrol location. The process by which they may file any such administrative claim was provided to them, and her attorneys, during pre-condemnation negotiations. Ex. 3 (standard Right of Entry for Survey and Site Assessment).

18. The landowners also may pursue a future claim to recover for damages that the United States allegedly caused to the property in the course of utilizing its right of entry. Potential avenues for these claims include the Federal Tort Claims Act, which authorizes monetary civil claims against the federal government for loss of property caused by the negligent act or omission of any government employee acting within the scope of his or her employment. 28 U.S.C. § 1346(b) (2013). Another potential remedy is an inverse taking claim. Specifically, if the government damages the landowner's property then the landowner may claim that the government took that property interest without providing compensation. The United States Court of Federal Claims has

jurisdiction over these types of takings claims.[4] *See, e.g., Yokum v. United States*, 11 Cl. Ct. 148, 149 (1986); *Elliott v. United States*, 184 Ct. Cl. 298, 304 (Ct. Cl. 1968) (discussing a damages claim for "the loss of corn which was tramped down by the surveying party"). In short, if a landowner suffers physical damage to its property beyond the limited activities identified in the estate taken during the term of temporary easement, several potential remedies are available to recoup those damages, but they are not compensable as part of just compensation for the property the United States temporarily acquires. *See Olson v. United States,* 292 U.S. 246, 257 (1934); *United States v. 101.88 Acres of Land, More or less, Situated in St. Mary Parish, State of La.*, 616 F.2d 762, 772 (5th Cir. 1980) (holding that a landowner is not entitled to an award of compensation for a potential, future, taking).

## CONCLUSION

The temporary easement acquired in this case has no measurable market value, and therefore, nothing more than a nominal value should be assigned to it. Nevertheless, rather than offer nominal compensation of $1.00, the United States has offered estimated compensation of $100.00 or a temporary, minimally invasive, limited right of entry. The landowner is free to contest the government's determination that a nominal amount of compensation is appropriate, which she has not done to date. The landowner also has the opportunity to pursue future claims for damage to her property in exercise of this limited right of entry. For these reasons, the government properly deposited a nominal sum of $100.00 in the registry of the Court, and the Court should accept this amount as just compensation owed.

---

[4] For Fifth Amendment takings claims against the United States seeking more than $10,000.00, the United States Court of Federal Claims has exclusive jurisdiction. 28 U.S.C. § 1491(a)(1) (Tucker Act). For claims of $10,000.00 or less, the Court of Federal Claims shares concurrent jurisdiction with the United States district courts. 28 U.S.C. § 1346(a)(2) ("Little Tucker Act").

Respectfully submitted,

**RYAN K. PATRICK**
United States Attorney
Southern District of Texas

By: *s/ Alexander N. DerGarabedian*
**ALEXANDER N. DERGARABEDIAN**
Assistant United States Attorney
Southern District of Texas No. 3381593
New York Bar No. 5103577
1701 W. Bus. Highway 83, Suite 600
McAllen, TX 78501
Telephone: 956-992-9380
Facsimile: (956) 618-8016
E-mail: alexander.dergarabedian@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing BRIEF ON JUST COMPENSATION was served via the District ECF system on all counsel of record on June 11, 2020.

By: *Alexander N. DerGarabedian*
**ALEXANDER N. DERGARABEDIAN**
Assistant United States Attorney