IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 7:20-CV-026 |
| 1.8946 ACRES OF LAND, MORE OR LESS, SITUATE IN STARR COUNTY, STATE OF TEXAS; AND MAURO R. GARCIA, JR., ET AL, | § § § § § | |
| Defendants. | § § | |

### <u>DEFENDANT MAURO R. GARCIA, JR.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR IMMEDIATE POSSESSION</u>

TO THE HONORABLE MICAELA ALVAREZ, UNITED STATES DISTRICT JUDGE:

Defendant Mauro R. Garcia, Jr. ("Defendant"), respectfully submits the following Response in Opposition to Plaintiff's Opposed Motion for Order of Immediate Possession, Doc. 8, Pl's. Mot.

### I. INTRODUCTION AND BACKGROUND

1.  Plaintiff, the United States of America, seeks an easement to enter Defendant's land and conduct investigatory work for the eventual construction of fencing and other structures purportedly meant to secure the border between Mexico and the United States. To that end, Plaintiff sent Defendant a proposed Right of Entry on or about September 12, 2018. Defendant rejected that proposal. Thereafter, Plaintiff made several other attempts to secure Right of Entry despite Defendant communicating his opposition to Plaintiff's proposal. On January 28, 2020, Plaintiff again sought to convince Defendant to sign the proposed Right of Entry, and Defendant

113960.000005 4846-8309-3177.1

again rejected the proposal.

2.      Plaintiff then waited until January 28, 2020—approximately sixteen months after sending Defendant the first proposed Right of Entry—to file the Complaint and Declaration of Taking at issue in this case. *See* Docs. 1, 2. Plaintiff seeks to condemn an easement spanning approximately 1.8946 acres of land owned by Defendant for the purpose of conducting investigatory work prior to the construction of fencing or other structures supposedly meant to "help secure the United States/Mexico border within the State of Texas." Doc. 1-1, Schedules B, C, and E. Plaintiff additionally deposited $100.00 in the Registry of the Court for what it allegedly considers "just compensation" for this taking. *Id.*, Schedule F; Doc. 1; Doc. 7.

3.      Most recently, on February 20, 2020—seventeen months after sending Defendant the initial proposed Right of Entry, and one month after filing its Complaint—Plaintiff filed an Opposed Motion for Order of Immediate Possession. *See* Doc. 8, Pl's. Mot. Plaintiff claims it needs "immediate access" to and "immediate possession" of the property sought in order to construct fencing in the Rio Grande Valley and thereby further the Congressional directive expressed in the Secure Fence Act of 2006, Pub. L. 109-367, § 2, 109 Stat. 2638 (Oct. 26, 2006), the President's Executive Order on *Border Security and Immigration Enforcement* Improvements, Executive Order 13767 § 4(a), and the Consolidated Appropriations Acts of 2018 and 2019, Pub. L. 115-141, 132 Stat. 348, div. F, tit. II; Pub. L. 116-6, div. A, Tit. II, Section 230. *Id.* at 4.

4.      Defendant opposes Plaintiff's motion and the Court should deny it, at least in part, for the reasons discussed below.

## II ARGUMENT

5.      As a preliminary matter, Defendant owns the property which is the subject of this litigation with his sister, Olga Garcia. The two each own an undivided one half interest in the

2

property. As an owner, Ms. Garcia is a necessary party to this action. The Government is aware of Ms. Garcia's ownership interest and while they have named her as a party, they have failed to serve her to date. Mr. Garcia prays this court not grant the Government access to the property his sister and he own till all necessary parties have been served and appeared.

6. Defendant also raised numerous objections and defenses in his Answer, pursuant to Federal Rule of Civil Procedure 71(e)(2)(C), including that Plaintiff has exceeded its legal authority to execute the taking at issue here. *See* Doc. 17, Def's. Ans. ¶¶ 18–31.[1] However, for purposes of responding to Plaintiff's Motion for Immediate Possession, Defendant argues only that the equities weigh in favor of the Court requiring the United States provide at least 72 hours' notice prior to any entry by Plaintiff onto Defendant's property so that Defendant may observe Plaintiff's activities thereon.

### A. Legal Standard: the Declaration of Taking Act

7. The Declaration of Taking Act ("DTA") permits the Government to bring an expedited proceeding to acquire an easement in land, for public use, by filing a Declaration of Taking setting forth a statement of authority under which the land is being taken, the public use for which the land is being taken, a description of the land, the estate or interest in the land being taken, a plan showing the land being taken, and an estimate of the just compensation amount. *See*

---

[1] Defendant has the right to litigate his objections to the legal sufficiency of Plaintiff's claim of authorization for this taking at any point up to and including during trial. *See, e.g.*, Steven S. Gensler, 2 Fed. R. Civ. P. Rules and Commentary, Rule 71.1 ("The text of Rule 71.1(e)(3) was expressly intended to prohibit the filing of pre-answer motions that otherwise would be authorized by Rule 12 . . . . [but] nothing in the test of Rule 71.1(e) . . . precludes motions asking the court to rule on objections and defenses that are set forth in the answer," such as by motion under Rule 12(c) for judgment on the pleadings); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006) (Federal Rule of Civil Procedure 12(h)(2) preserves objections to legal sufficiency of complaint "up to, but not beyond, trial on the merits," which "may be made in any pleading . . . or by motion for judgment on the pleadings, or at the trial on the merits"); *Saunders-El v. Rohde*, 778 F.3d 556, 559 (7th Cir. 2015) (defenses to legal sufficiency are preserved throughout litigation, "[n]o matter the label or the rule under which defendants' motion was filed," and "if [a plaintiff's claim ha[s] no legal grounding . . . the district court not only [is] permitted to dismiss it, it [is] required to do so").

3

40 U.S.C. § 3114(a). "The United States has the authority to take private property for public use by eminent domain . . . but is obliged by the Fifth Amendment to provide 'just compensation' to the owner thereof." *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 9 (1984) (citation omitted).

8. Once the Government files a Declaration of Taking and deposited the estimated compensation amount in the Registry of the Court, "(1) title to the estate or interest specified in the declaration vests in the United States; (2) the land is condemned and taken for the use of the Government; and (3) the right to just compensation for the land vests in the persons entitled to the compensation." *Id.* at § 3114(b). However, the Court "may fix the time within which, and the terms on which, the parties in possession shall be required to surrender possession to the petitioner." *Id.* at § 3114(d)(1).

9. The sole defense to a condemnation action is that the United States lacks the authority to take the interest sought in the complaint in condemnation. *United States v. 162.20 Acres of Land*, 639 F.2d 299, 303 (5th Cir. 1981) cert. denied 454 U.S. 828 (1981). Additionally, "courts have determined that the eminent domain statutes require some level of negotiation between the government and the owner of a property interest prior to the institution of eminent domain procedures." *United States of America v. 27.36 Acres of Land, More or Less, et al.*, 7:18-CV-338, Doc. 21 (S.D. Tex. Dec. 12, 2018) (hereinafter *27.36 Acres*) (Alvarez, J.) (citing *United States v. 1.04 Acres of Land, More or Less, Situate in Cameron County, Tex.*, 538 F. Supp. 2d 995, 1007 (S.D. Tex. 2008).

**B. This Court's Prior Ruling**

10. This Court recently granted in part, but modified, the United States' request for immediate possession of an identical easement interest in a related border-infrastructure,

4

condemnation case, premised on substantially the same Congressional and Executive directives as those at issue here.  *See 27.36 Acres*, 7:18-CV-338, Doc. 21 (Alvarez, J.).  The defendants in that case had not yet answered the complaint nor raised objections and defenses regarding the United States' authority for the taking, and the Court ruled that the United States was entitled to possession of the property at issue because under the DTA, title and the right to possession of property had vested immediately in the United States upon the filing of a Declaration of Taking and the deposit of the estimated compensation amount in the Registry of the Court.  *Id.* at 5, 8.  The Court also rejected the defendants' arguments that (1) possession of the property was not necessary to fulfill the Congressional and Executive directives at issue, and (2) that there was no reasonable need for a border wall, because both questions were "beyond the purview of this Court." *Id*. at 7–9.

11.     Nevertheless, the Court "remind[e]d the United States that it should not, and may not, rely on this Court, an independent member of the judiciary, to rubber-stamp *any* judicial filing by *any party* without engaging in the scrutiny necessary to ensure fundamental fairness of process for all parties." *Id.* at 11.  The Court noted that it has the authority under the DTA to fix the time and terms of possession, i.e., "to ensure that the United States does not abuse the authority it has been granted and that landowners are afforded sufficient process before being deprived of their

5

property." *Id.* at 10.[2] The Court recognized that any "urgency on the part of the United States appear[ed] to be a self-created emergency" because the United States had begun conferring with the defendants in April 2018 and determined further negotiation was futile in September 2018, yet failed to file its complaint until November 5, 2018, and its Motion for Immediate Possession until November 14, 2018. *Id.* at 4, 9. As a result—after considering the Government's delay, its actions surveying other properties, the costs associated with further delay, the extent of the expected interference with defendants' use of their property, and the defendants' need for reasonable notice due to the presence of rental properties and animals on the land—the Court ruled that the United States was required to provide the defendants at least 72 hours' notice before any entry onto their property. *Id.* at 9–11.

12. Finally, despite neither party raising the issue, the Court independently expressed "concern[ that the estimated compensation of $100 [was] insufficient given the easement being requested." *Id.* at 11. It therefore invited the defendants to present evidence on that point in order "to ensure the[ir] rights to their property [were] fully protected." *Id.* at 12.[3]

**C. As in *27.36 Acres*, the Balance of the Equities Justify a Notice Period in This Case**

---

[2] Citing *United States v. 74.57 Acres*, No. 12-0239-WS-N, 2012 U.S. Dist. LEXIS 51441, at *7-8 (S.D. Ala. Apr. 11, 2012) (noting that "[f]ederal courts have construed [§ 3114(d)] as empowering (and perhaps even obligating) district courts to examine the equities of the matter to evaluate whether some undue hardship to the present landowner or occupant might warrant some temporal gap between the filing of the declaration of taking and the owners' surrender of possession."); *East Tennessee Natural Gas Co. v. Sage,* 361 F.3d 808, 825 (4th Cir. 2004) ("Although the district court fixes the time and any terms of the possession, the government takes possession of the condemned property as a matter of course, unless the landowner or occupant demonstrates some undue hardship that warrants a delay."); *United States v. Certain Land in Borough of Manhattan, City, County and State of New York*, 332 F.2d 679, 682 (2nd Cir. 1964) (remanding for district court to exercise its statutory power "to determine the terms and conditions of possession by the government" after hearing from such witnesses as all parties may wish to call); *United States v. 6576.27 Acres of Land, More or Less, in McLean County, N.D.*, 77 F. Supp. 244, 246 (D.N.D. 1948) (act affording court the power to fix time and terms of possession confers "duty on the part of this Court to see that such date for possession and terms of possession are in accordance with the equities.").
[3] Defendant has already made clear his disagreement with Plaintiff's purported "just compensation" of $100, and does not argue it here. *See* Def's. Answer, Doc. 12 ¶ 7.

6

13. The balance of the equities weigh in favor of Defendant for the reasons explained below, and he respectfully requests the Court require the United States provide a notice period of at least 72 hours prior to any entry onto Defendant's land.

### i. Any Urgency in This Case is the Result of the United States' Delay

14. As a preliminary matter, any urgency here is the result of the United States' own failure to act, just as it was in *27.36 Acres*. There, the United States contacted the defendants in April 2018 and determined further negotiation was futile in September 2018, but did not file its complaint and motion for immediate possession until November 2018—a delay of seven months from contact and two months from final rejection. *See 27.36 Acres*, 7:18-CV-338, Doc. 21 at 4, 9. Here, the United States initially contacted Defendant in September 2018 and was rebuffed several times, tried again in January and February of 2019, was again rejected, then waited until January 2020 to file its Complaint and Declaration of Taking—a delay of over sixteen months from first contact and over ten months from the final rejection—and then until late February 2020 to file the instant Motion for Immediate Possession. The United States' delay between its attempted negotiations and the filing of its Complaint/Motion for Immediate Possession in this case substantially exceeds that in *27.36 Acres*. To the extent this delay contributes to any sort of urgency or the costs associated with the taking, the United States has no one to blame but itself.

### ii. The United States Fails to Identify Any Factors Weighing in its Favor

15. Next, unlike in *27.36 Acres*, the United States identifies no factors that weigh against the Court implementing Defendant's requested notice period. In *27.36 Acres*, the Court found it meaningful that the United States had "provided affidavits indicating that delay will cost the United States, and thus the taxpayer, additional expense." 7:18-CV-338, Doc. 21 at 10. The United States in that action also presented evidence that the property at issue was the last in a series

7

of tracts that needed to be surveyed, and pledged to finish surveying within thirty days, which suggested "minimal interference for Defendants' use of their property." *Id.* at 10–11. The United States has not identified any similar considerations here; it simply maintains that because it is purportedly authorized to condemn this easement, it has "demonstrated [a] need for immediate access." Doc. 9, Pl's. Mot. at 5.

### iii. Defendant's Circumstances Weigh in Favor of a 72 Hour Notice Period

16. Finally, the nature of the property sought by the United States, as well as Defendant's interests in the land, justify permitting Defendant to observe Plaintiff's activities on his land. For those same reasons, and because Defendant does not live on the property, a notice period of at least 72 hours is reasonable in order to give him a fair and realistic opportunity to carry out that observation.

17. First, the United States seeks to take an easement. But "[a]n easement does not convey title to property." *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 658 (Tex. 2007) (citing *Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002)). "It is instead a nonpossessory interest that authorizes its holder to use the property for only particular purposes." *Id.* (citation omitted). "The fee owner of land on which an easement has been granted has the right of full dominion and use of the land not inconsistent with the reasonable enjoyment of the easement." Jon J. Dvorske, 31A Tex. Jur. 3d Easements & Lic. in Real Property § 66 (collecting cases); *Gulfview Condo. Council of Co-Owners, Phase II, Inc. v. Gulfview Condo. Phase I Council, Inc.*, 1998 WL 35277447, at *2 (Tex. App.—Corpus Christi Dec. 30, 1998, no pet.). "A grant or reservation of an easement in general terms implies a grant of unlimited reasonable use such as is reasonably necessary and convenient and *as little burdensome as possible to the servient owner.*" *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974) (emphasis). Accordingly, Defendant may

8

be entitled to "damages from the United States for exceeding the scope of the easement." *See, e.g.*, *Canova v. Shell Pipeline Co.*, 290 F.3d 753, 758 n.15 (5th Cir. 2002) (emphasis omitted); *Holloway v. Matagorda County*, 667 S.W.2d 324, 327 (Tex. App.—Corpus Christi 1984), *aff'd*, 686 S.W.2d 100 (Tex. 1985).

18. Second, the property to which Plaintiff seeks entry has been in Defendant's family since 1750, stretching back to the original Spanish land grants. Defendant's property not only has monetary value, but also personal and family history.

19. Defendant has, in the past, leased the property out for farming. Plaintiff's actions beyond the scope of their easement may endanger any future revenue source. The 72-hour notice period, again, allows Defendant to observe Plaintiff's activities and preserve any future recourse he may have for their actions beyond the scope of their easement.

20. The preservation of the land is therefore of particular value to Defendant, not only monetarily—both in its potential sale value and as a source of ongoing income—but also as his familial birthright. Furthermore, the easement the United States seeks "begin[s] on the date possession is granted to the United States and end[s] 12 months later, consisting of the right of the United States, its agents, contractors, and assigns to enter in, on, over and across [Defendants'] land . . . . to survey, make borings, and conduct other investigatory work . . . and to access adjacent lands; including the right to trim or remove any vegetative or structural obstacles that interfere with said work . . . ." Doc. 1-1, Schedule E. This language is far-reaching and covers a significant breadth of activity, including activities that pose the potential for substantial damage to Defendant's servient estate. It seems likely, depending on the actions Plaintiff actually takes, that whether those actions fall within the scope of the easement will be reasonably susceptible to differing interpretations. Defendant would therefore like to be present to monitor the United States'

9

activities so that he can observe what actions it takes and object to or create a record of those he believes exceed the scope of the easement. Thus, because Defendant may have the right to seek damages from the United States if it exceeds the scope of the easement, and because he has a personal interest in the preservation of his property above and beyond his bare legal rights as the owner of the servient estate, he should have the opportunity to be present for and observe the United States' activities on his land.

21. Defendant therefore requests the Court order that the United States provide at least 72 hours' notice prior to any such entry and/or activity. A minimum of 72 hours' notice is reasonable because Defendant does not currently reside on the property, and must travel to the property from his current place of residence. Beyond this, it is likely that the United States will enter Defendant's land to conduct its surveying and other investigatory work for a minimum of several hours at a time, which means that Defendant must set aside a corresponding amount of time in order to observe its activities. Given these considerations, a notice period of at least 72 hours will therefore permit Defendant sufficient time to arrange his schedule to accommodate these periods of observation as well as travel to the property.

22. Lastly, this notice period will not inconvenience Plaintiff, nor make it substantially more difficult to complete any investigatory work during the pendency of the easement. Plaintiff seeks a full *year* of possession; 72 hours makes little difference when set against that timeframe.

### III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court, pursuant to its authority under the Declaration of Taking Act, "fix the time within which, and the terms on which" Defendant must surrender possession to Plaintiff, 40 U.S.C. § 3114(d)(1), to require the United States give Defendant at least 72 hours' notice prior to any entry onto Defendant's property.

10

Dated: June 12, 2020

                              Respectfully submitted,

                              By:    */s/ Kevin M. Sanchez*
                                         Kevin M. Sanchez
                                         Attorney-in-Charge
                                         State Bar No. 24104295
                                         Federal ID# 3083798

                                         **DYKEMA GOSSETT PLLC**
                                         1400 N. McColl Road, Suite 204
                                         McAllen, Texas 78501
                                         (956) 984-7400 – Telephone
                                         (956) 984-7499 – Facsimile
                                         KSanchez@dykema.com

                                         *Attorney for Defendant,*
                                         *Mauro R. Garcia, Jr.*

## **Certificate of Service**

The undersigned counsel hereby certifies that, on the 12 day of June, 2020, he electronically submitted a true and correct copy of the foregoing Response in Opposition to Plaintiff's Motion for Immediate Possession, Doc. 8, with the Court via the CM/ECF system, which will serve a copy on all counsel of record for Plaintiff.

                                                         */s/ Kevin M. Sanchez*
                                                         Kevin M. Sanchez

113960.000005 4846-8309-3177.1